

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DISTRICT

RODERICK GREER TALLEY          )
                               )
            Plaintiff,         )
      v.                       )        Docket No. 3:23-cv-252-HTW-LGI
                               )
JACKSON STATE UNIVERSITY,      )
ERIC STANTON in his individual and )
official capacity, SHIVON JORDAN in her )
individual and official capacity, JOSEPH )
BRADLEY in his individual and official )
capacity, HERMAN HORTON in his )
individual and official capacity, LAQUALA )
DIXON, in her individual and official )
capacity ELTEASE MOORE in her )
individual and official capacity )
                               )
            Defendant.         )
_____)

## COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS AND INJUNCTIVE RELIEF

### INTRODUCTION

1.    This lawsuit arises out of the unjust and unlawful arrest and expulsion of Plaintiff from

      Jackson State University in April 2023, three (3) weeks before he was about to graduate from

      college.

2.    On March 23, 2023, Plaintiff was falsely arrested for domestic violence simple assault

      pursuant to Mississippi 97-3-7(a) by Jackson State University police officer Eric Stanton.

3.    Subsequently, after the false arrest Officer Eric Stanton illegally searched the plaintiff's

      personal property without his consent and recovered a gun.

4.    Plaintiff was released from incarceration on March 28, 2023. Upon his release, Jackson State

      University withdrew the plaintiff from all ten (10) classes.

5.   Jackson State University failed to investigate the complaint and hold a full and fair hearing in compliance with its own policies and requirements of Title IX of the 1972 Educational Amendments Act. After Jackson State University was informed by the Plaintiff of their violation of his right to Due Process, he was allowed to return to Jackson State University as a student but was illegally banned from the campus and property of Jackson State University.

6.   Jackson State University took no steps to investigate the plaintiff at the time because, pursuant to its own policies, it intended to rely solely on the complaint by Jackson State University officer Eric Stanton.

7.   Upon information and belief, that an investigation and decision would be conducted pursuant to Jackson State University's Campus Violation policy and procedures, with respect to the general student rights and responsibilities which were designed to believe the allegation, assume the guilt of the accused, and reach a conclusion favorable to the alleged victim. Jackson State University's application of these unfair and biased procedures to the plaintiff, who was set to be exonerated of the charges against him in the Hinds County Justice Court on April 11, 2023, for lack of probable cause, breached Jackson State University's promise to plaintiff that he "will be treated ... in an unbiased manner by all involved administrators, investigators, and adjudicators" and the basic tenets of fundamental fairness guaranteed by Jackson State University's policies.

8.   On April 6, 2023, a hearing was held by the Jackson State University Dean of Students office. However, the hearing was held by students while staff members availed themselves on camera. The hearing was not a *de novo* hearing. The hearing isolated the events and focused solely on the recovery of a gun.

9.   Predictably, given JSU's foregone conclusion that the plaintiff was guilty, the plaintiff was found responsible for the charge of Student Conduct 4.45 VIOLATION OF CRIMINAL

CODE OF THE LOCAL, STATE OR FEDERAL GOVERNMENT - Actions or activities, on or off-campus, that violate criminal law and Student Conduct/ 4.50 WEAPONS/FIREARMS - The use, storage, possession, or display of weapons, firearms, self-defense devices, or explosives is strictly prohibited on the premises of the University and suspended for 3 years.

10. Plaintiff has suffered and will continue to suffer serious damages as a result of Jackson State University's actions, including but not limited to the temporary loss of his freedom when he was wrongfully incarcerated for a week, loss of his Jackson State University degree, loss of other educational opportunities, the loss of job opportunities, reputational harm, and emotional distress.

## JURISDICTION AND VENUE

11. This action arises out of Jackson State University's breach of its contractual and other obligations to the plaintiff, as well as its violations of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681), as well as its violation of 42 U.S.C. § 1983 and§ 1988 and the Fourth and Fourteenth Amendments to the U.S. Constitution.

12. The plaintiff is a resident of Mississippi, and the defendants are residents of Mississippi. The amount in controversy is over $250,000.00.

13. This Court has jurisdiction pursuant to 28 U.S.C §§§ 1331, 1332, and 1343

14. Venue is proper in the district under 28 U.S.C. § 1391(b)

## THE PARTIES

15. Roderick Greer Talley is a U.S. citizen who resides in Mississippi. Between August 2021 and April 2023, the plaintiff was a student at Jackson State University. He was scheduled to graduate on April 29, 2023.

16.     Defendant Jackson State University ("hereinafter JSU") is a federally funded public

university organized and existing under the virtue of the laws of the State of Mississippi,

residing and doing business in Hinds County, MS.

17.     Defendant Herman Horton ("hereinafter Horton") at all times alleged in this Complaint was

employed by the Defendant Jackson State University as the Chief of Police of the Jackson

State University Police Department ("hereinafter JSUPD") and was and is a public employee

and a law enforcement officer within the meaning of the Mississippi Tort Claims Act.

Defendant Horton had the power, right, and duty to control the manner in which

Defendants Stanton, Jordan, and Bradley carried out the objectives of their employment and

to see that all orders, rules, instructions, and regulations promulgated for the Jackson State

University Police Department were consistent with the Constitution and the laws of the

municipality. At all times alleged in this Complaint, Defendant Horton was acting within the

course and scope of his employment and acting under the color of law. Defendant Horton

also is personally and individually liable for the Plaintiffs' damages as alleged herein

18.     Defendant, Eric Stanton ("hereinafter Stanton") at all times alleged in this Complaint was

employed by Defendant Jackson State University as the Captain of Operations of the

Jackson State University Police Department ("JSUPD") and was and is a public employee

and a law enforcement officer within the meaning of the Mississippi Tort Claims Act.

Defendant Stanton was acting within the course and scope of his employment and acting

under the color of law. Defendant Stanton also is personally and individually liable for the

Plaintiffs' damages as alleged herein.

19.     Defendant, Shivon Jordan ("hereinafter Jordan") at all times alleged in this Complaint was

employed by Defendant Jackson State University as the Captain of Administration of the

Jackson State University Police Department ("JSUPD") and was and is a public employee

and a law enforcement officer within the meaning of the Mississippi Tort Claims Act. Defendant Jordan was acting within the course and scope of her employment and acting under the color of law. Defendant Jordan also is personally and individually liable for the Plaintiffs' damages as alleged herein.

20. Defendant, Joseph Bradley ("hereinafter Bradley") at all times alleged in this Complaint was employed by Defendant Jackson State University as the Investigator of the Jackson State University Police Department ("JSUPD") and was and is a public employee and a law enforcement officer within the meaning of the Mississippi Tort Claims Act. Defendant Bradley was acting within the course and scope of his employment and acting under the color of law. Defendant Bradley also is personally and individually liable for the Plaintiffs' damages as alleged herein.

21. Defendant, LaQuala Dixon ("hereinafter Dixon") at all times alleged in this Complaint was employed by Defendant Jackson State University as the Dean of Students of the Jackson State University Dean of Students Office. Defendant Dixon was acting within the course and scope of her employment and acting under the color of law. Defendant Moore also is personally and individually liable for the Plaintiffs' damages as alleged herein.

22. Defendant, Eltease Moore ("hereinafter Moore") at all times alleged in this Complaint was employed by Defendant Jackson State University as the Coordinator for Student Conduct and Community Standards of the Jackson State University Dean of Students Office. Defendant Moore was acting within the course and scope of her employment and acting under the color of law. Defendant Moore also is personally and individually liable for the Plaintiffs' damages as alleged herein.

## FACTS

### Plaintiff's Academic History at Jackson State University

23. Plaintiff was admitted to Jackson State University in the Fall of 2021 and enrolled as a Junior that fall majoring in Political Science with a concentration in Legal Studies.

24. Plaintiff had sufficient credits that transferred from other institutions which would allow him to graduate in the Spring of 2023 if the curriculum provided was followed.

25. Plaintiff successfully made the Dean's List in the Fall of 2021. Plaintiff also enrolled in the winter intercession classes which he successfully passed.

26. In the Spring of 2022, the plaintiff decided to add a second major in Sociology and a minor in Finance and Criminal Justice to his degree curriculum at Jackson State University. Defendant then enrolled at Holmes Community College and completed 7 classes for a total of 21 hours while also being enrolled at Jackson State University and completing 6 classes for a total of 39 hours in one semester. Plaintiff successfully passed all courses.

27. During the Spring 2022 semester student was named Mr. Pre-Law of the Fannie Lou Hamer Pre-Law Society and President of the Pi Sigma Alpha Political Science Honors Society.

28. Plaintiff enrolled in seven (7) classes at Jackson State University for the Summer 2022 semesters which Plaintiff successfully passed all courses.

29. Plaintiff enrolled in six (6) classes at Jackson State University in the Fall of 2022 which Plaintiff successfully passed all courses making the Dean's List.

30. Plaintiff enrolled in ten (10) classes at Jackson State University in the Spring of 2023 (Exhibit A), three (3) classes at the University of Arkansas at Little Rock (Exhibit B), and four (4) classes at Holmes Community College (Exhibit C) for a total of 17 classes which equated to 52 credit hours.

## The Domestic Violence Simple Assault at JSU

31. On the morning of March 23, 2023, at about 11:43 am, the plaintiff and LaQuita Jones arrived at Jackson State University. A verbal disagreement ensued between Plaintiff and LaQuita Jones about wearing a beanie.

32. LaQuita Jones insisted she did not want to remove her beanie due to her hair not being properly managed and that she would rather sit in his vehicle.

33. Plaintiff informed LaQuita Jones that she could not sit in his vehicle and asked her to step away from his vehicle.

34. LaQuita Jones refused to step away from the plaintiff's vehicle and after several pleas, with LaQuita Jones, the plaintiff placed his hands on LaQuita Jones's shoulders and extricated her from the door well of the vehicle to close the door.

35. After the plaintiff locked the doors LaQuita Jones threw a phone and hit the Plaintiff before falling to the ground and breaking it.

36. Plaintiff picked up his phone and continued to class. Plaintiff's class was dismissed at 12:50 and upon his return to his vehicle, Plaintiff observed LaQuita Jones on the passenger side of his vehicle sitting on the curb.

37. Plaintiff entered his vehicle and sat in the vehicle until 2:13 pm. Plaintiff observed LaQuita Jones talking to a Jackson State student as he sat in his vehicle. Defendant then got out of his vehicle and walked around to the passenger side of his vehicle to open his door and retrieve LaQuita Jones's backpack. After giving LaQuita Jones her backpack, Plaintiff walked into the College of Liberal Arts building to use the vending machine.

38. After returning from the vending machine Plaintiff saw that LaQuita Jones and the JSU student were no longer sitting on the curb. Plaintiff began to walk the campus in hopes of finding LaQuita Jones. Due to the recent murder and rapes that happened on the campus of

JSU, I was concerned for the safety of LaQuita Jones being that she was only eighteen (18) and did not know anyone at JSU or in Jackson.

39.     Plaintiff then contacted LaQuita Jones's mother in hopes that she had heard from her daughter but to no avail. After Plaintiff realized the JSU student that LaQuita Jones was sitting with shared a mutual peer, Plaintiff contacted the mutual peer in hopes that she would contact the JSU student that was with LaQuita Jones, however, those hopes were diminished with a response stating, "I can't help you."

40.     After searching through Instagram, I found that the JSU student followed me on Instagram, and I attempted to make contact but the student refused to answer. At this point, I turned to the campus police.

41.     I entered the Public Safety building and alerted the front desk clerk that I needed assistance finding someone. After about 30 minutes Officer Shivon Jordan entered the lobby. I informed her that LaQuita Jones rode with me from home and had gone missing. Jordan then asked about my relationship with LaQuita Jones, and I stated she was a family friend, like my lil sis.

42.     I informed Jordan whom I last saw LaQuita Jones and that I had been in contact with her mom and a JSU student who knew her whereabouts. Jordan then attempted to call the number I provided to her of that JSU Student.

43.     After the call would not go through I sent a picture to the JSU student showing them I was with JSU police and that we just wanted to know that La was safe. I then sent a picture of the text conversation between myself and LaQuita Jones's mother pleading with her to have LaQuita Jones call her mom. I did not want to have to explain to her mother why I was back in our hometown without her daughter.

44.  After calling LaQuita Jones's mother again she informed me that she had made contact with LaQuita Jones and that a young lady said there had been a disturbance.

45.  At this point, I was standing outside on the phone and that's when Jordan asked me to come back inside so that they could find LaQuita Jones because this was a serious situation and JSUPD wanted to find her because so many things could go wrong, and they didn't want any negative publicity.

46.  Jordan walked me into a room and handed me a form and asked me to describe what LaQuita Jones was wearing, then about 3 minutes into being walked into the room Jordan asked me to stand up and put me in handcuffs stating I was being detained but would not answer me as to why. The only explanation I got was to wait on the captain.

47.  When Stanton entered the room he immediately pulled out a recorder and read my Miranda rights. I asked Stanton what I was being charged with and stated domestic violence simple assault and informed me he wasn't answering any questions.

48.  Stanton then stated that LaQuita Jones said that when I grabbed her shoulders it "hurt." Plaintiff informed Stanton that there was no force used on LaQuita Jones when extricating her from the door of his vehicle. Stanton then replied, you don't know her level of pain and simply touching someone is assault if they say, "It hurts."

49.  I proceeded to ask Bradley to pull their Mississippi statute book. Bradley retrieved it and after a short period returned to the room. Bradley then asked me to read the statute in which I was being charged. The statute read,

50.  Pursuant to Miss. Code § 97-3-7(3)(a):

    When the offense is committed against a current or former spouse of the defendant or a child of that person, a person living as a spouse or who formerly lived as a spouse with the defendant or a child of that person, a parent, grandparent, child,

grandchild or someone similarly situated to the defendant, a person who has a current or former dating relationship with the defendant, or a person with whom the defendant has had a biological or legally adopted child, a person is guilty of simple domestic violence who:

(i) Attempts to cause or purposely, knowingly, or recklessly cause bodily injury to another;

(ii) Negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or

(iii) Attempts by physical menace to put another in fear of imminent serious bodily harm.

Upon conviction, the defendant shall be punished by a fine of not more than Five Hundred Dollars ($500.00) or by imprisonment in the county jail for not more than six (6) months, or both.

51. LaQuita Jones in a notarized statement (included as Exhibit D) stated that she informed Officer Stanton multiple times that she has not been physically harmed and that she had no desire to get Plaintiff in any trouble or have him arrested because he had not done anything.

52. LaQuita Jones stated she did not contact the police, the JSU student did after being informed Plaintiff was with campus police. LaQuita Jones said when she told Stanton that she was not Plaintiff's sister and that she was 18, Stanton become agitated as if he was disgusted due to Plaintiff's age and her age.

53. According to LaQuita Jones's statement, Stanton repeatedly stated you don't have to worry, then asked LaQuita Jones to see her arms and she showed him she had no bruises minus a hot curler burn she made rushing that morning to try to manage her hair which she was unsuccessful in doing.

54.     However, Stanton told her she doesn't have to worry about anything. He was going to take

        care of it. LaQuita Jones stated he heard Stanton tell someone to handcuff him and then told

        her to write down what she had orally told him.

55.     LaQuita Jones stated she was not aware she was filing a police report. She had never had an

        interaction with police and the form only had Jackson State University on the top, therefore

        she thought it was just something Jackson State needed because she and Plaintiff got into a

        disagreement on campus. LaQuita Jones stated she felt forced by Stanton after she

        repeatedly told him she was not trying to get Plaintiff in any trouble.

56.     Though Stanton saw no visible bruises, scrapes, scars, or bodily injury he proceeded to arrest

        me on the notion that LaQuita Jones stated that her feelings were hurt. That is when Jordan

        stated assault doesn't have to be physical it can be emotional.

57.     Despite lacking probable cause and any evidence to suggest simple assault I was illegally

        arrested and after the arrest my backpack was illegally searched, and a gun was recovered.

58.     JSU page 11 of the JSU Student Handbook under search and seizure the handbook states:

                Students have the right to secure their personal possessions against the invasion of

                privacy and unreasonable search and seizure, subject to restrictions imposed by the

                Division of Student Affairs and the Department of Public Safety. However, the

                University reserves the right to enter occupied residence hall rooms for health and

                safety inspections.

59.     Both the Fourth Amendment to the United States Constitution and the Mississippi

        Constitution provides "that all persons shall be secure `in their persons, houses, papers, and

        effects, against unreasonable searches and seizures and that `no warrants shall issue, but

        upon probable cause.'" Id. at 1141 (¶11) (quoting U.S. Const., amend. IV); accord Miss.

        Const. art. III, § 23.

60.  "Under the `fruit of the poisonous tree doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the Government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation.

61.  Stanton also charged the Plaintiff with providing false information to a Law Enforcement Officer for stating LaQuita Jones was his sister.

62.  Pursuant to MS Code § 97-9-79:

> Any person who shall make or cause to be made any false statement or representation as to his or another person's identity, social security account number, or other identifying information to a law enforcement officer in the course of the officer's duties with the intent to mislead the officer shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than Five Thousand Dollars ($ 5,000.00) or imprisoned for a term not to exceed one (1) year or both

63.  The nature of one's relationship does not constitute a false statement or representation of a person's identity, ss number, or other identifying information. Plaintiff was seeking assistance to locate a person, not to report a crime.

64.  Stanton and Bradley then transported Plaintiff to the Hinds County Detention Center.

65.  The following day Stanton purposely did not submit the affidavit to the Hinds County Courthouse to further delay the release of the Plaintiff. This delay by Stanton caused a violation of Rule 5.1(b)(3) of the Mississippi Rules of Criminal Procedure.

66.  Plaintiff did not see a Judge until Tuesday, March 28, 2023, at 4:30, 119 hours after his arrest at 5:30 pm on March 23, 2023.

67. On March 24, 2023, LaQuita Jones and her mother contacted the JSU Public Safety office asking to speak to someone regarding the arrest of the Plaintiff. LaQuita Jones did not know until that night that Plaintiff had been arrested and incarcerated.

68. According to the notarized letter submitted by LaQuita Jones. LaQuita Jones was informed that an investigator would not be back until Monday, March 27, 2023. LaQuita Jones and her mother drove to the JSU Public Safety building to speak with an investigator. After informing Bradley that they made a mistake and that she never stated the Plaintiff assaulted her she was told only Stanton could take her statement and he wouldn't be back until Thursday, March 30, 2023. Bradley then told LaQuita Jones and her mother they could go to Justice Court and tell them.

69. Upon Plaintiff's release County Court Judge McDaniel instructed Plaintiff to not possess a gun or to have contact with JSU without first informing Public Safety. However, the order did not state that specifically and had to be corrected by the court administrator due to the JSU Dean of Students office refusing to communicate with me though I had not been officially removed from JSU as a student.

70. After informing JSU Public Safety that I had been released I was informed that I could not be on campus and that I was under an indefinite interim suspension despite no my due process right being violated. After making mention of this through several emails after JSU Dean of Students office manager Stesha Mannery refused to answer any calls from the plaintiff's phone number.

71. On April 3, 2023, I was reinstated to my classes but I was still banned from the campus.

72. On Tuesday after meeting with Justice Court Judge Sutton, I was given a hearing date of April 11, 2023, for a dismissal of the charges of domestic simple assault and false information to a law enforcement officer.

73.    Plaintiff then requested a copy of the affidavit and discovery from the two charges and received a sheet of paper for both. Plaintiff then visited the Public Safety building which is stated in the handbook in an attempt to get copies of the case filings but was accosted by Chief Horton and told to leave the campus and that they would not be giving me anything.

### JSU Finds Plaintiff Responsible for the Charge

74.    Pursuant to Defendant JSU Student Handbook, page 47, provide, in pertinent part:

…… the Student Conduct hearing officers have the sole discretion in determining the appropriate sanction(s) for students, student groups, and/or student organizations found responsible for violating the Student Code of Conduct.

The purpose of the administrative or student conduct committee hearing is to reach a decision regarding the accused responsibility for violation of University rules or regulations, to provide due process for the accused, and to recommend a sanction if necessary. Although Public Safety generates the majority of incident reports, a representative from Public Safety does not have to be in attendance, in order for a schedule hearing to occur. Such decisions may affect students, groups, and student organizations and their relationship to the University. Administrative hearing decisions shall be determined by the Dean of Student Office designee.

75.    The decision to suspend Plaintiff for two years was made by the Dean of Students Office designee Defendant Eltease Moore and Student Conduct hearing officers who have the sole discretion in determining the appropriate sanction(s) for students, student groups, and/or student organizations found responsible for violating the Student Code of Conduct.

76.    Pursuant to its Student Handbook ("JSU Handbook"), which applies to students while they

are at JSU. JSU conducted a hearing based on the merits of **Stanton's** complaint of

possession of a weapon but not the domestic violence simple assault which led to the illegal

detention and illegal arrest that subsequently led to the discovery of a weapon after being

made aware that Stanton had committed perjury and submitted a false statement, and his

initial detention and arrest was without probable cause, therefore, making it illegal.

77.    On April 3, 2023, JSU notified Plaintiff that a hearing on the charge would be held. In the

notice (Exhibit F), the plaintiff was provided with the JSU hearing policies and informed of

his right to call witnesses at the hearing and to bring an advisor to the hearing. The witness

LaQuita Jones was also guaranteed those rights under the JSU policy.

78.    Plaintiff was charged with violations of Defendant JSU policies 4.45 and 4.50.

79.    That Defendant JSU policies 4.45 and 4.50 provide, in pertinent part:

> 4.45 VIOLATION OF CRIMINAL CODE OF THE LOCAL, STATE OR
>
> FEDERAL GOVERNMENT - Actions or activities, on or off-campus,
>
> that violate criminal law.
>
> 4.50 WEAPONS/FIREARMS - The use, storage, possession, or display of
>
> weapons, firearms, self-defense devices, or explosives is strictly prohibited on
>
> the premises of the University. Weapons include, but are not limited to the
>
> following: mace, pepper spray, rifles, shotguns, tasers, stun guns,
>
> ammunition, handguns, air guns, BB guns, bowie knives, daggers,
>
> switchblade knives, butcher knives, metallic or brass knuckles, explosives
>
> (including dangerous chemicals), water guns, play guns, firecrackers,
>
> propelled missiles, and fireworks. The possession or uses of items that
>
> resemble guns, knives, or other weapons are also strictly prohibited. A

concealed weapons permit may not constitute authorization. When course content and classroom assignments require the use of such items, the Provost, Vice President for Student Affairs or designee, and the Department of Public Safety will work collaboratively to provide written approval. The initial request should be submitted to deanofstudents@jsums.edu. This policy also applies to any device used as a weapon to intentionally harm another.

80. In accordance with the United States Constitution, no student may be deprived of his right to a free education, nor his liberty interest in his good name, by way of suspension or expulsion for allegedly bringing to, carrying, or keeping a weapon on school grounds, unless the school proves that the student did so knowingly, **i.e. intentionally.** See <u>Seal v. Hudson</u>, 229 F.3d 567, 2000 U.S. App. Lexis 24939, 19-21 (6th Cir 2000).

81. That no court or other reviewing authority can assume that the school's fact finder made this determination. The finding on the student's intent must be explicit. **Id**. at ___, 2000 U.S. App Lexis 24939 at 29-33.

82. That no school official who suspends or expels a student who unknowingly brings, carries, or keeps a weapon or firearm on school property is entitled to qualified immunity from suit for damages, for his or her actions. **Id**. at ___, 2000 U.S. App. Lexis 24939 at 36-38.

83. That the Defendants have suspended/expelled Plaintiff for a period of two years without finding that he knowingly i.e., intentionally, brought, carried, or kept a firearm on school property.

84. Eltease Moore asked Plaintiff, what time did he arrive on campus? what color or type of vehicle did I drive to campus? where was I headed when I arrived on campus? What items did he have when he left his class? At what point did he get his backpack? What classes did

he attend? Did he walk straight to public safety after class at 4? Did he have his backpack on when entering public safety? What color was the book bag? Was the weapon found before or after I was read my Miranda rights? What was found in the backpack when at Public Safety? Was there anything else found with the gun? Was a gun found on my person or backpack while at the public safety building? That concluded the hearing. I was not allowed to ask any questions. I was told to send an email if I had any questions.

### JSU Hearing in Violation of Its Policies

85. On April 6, 2023, a student discipline hearing was held. A copy of the hearing transcript and video recording has not been provided;).

86. That, upon information and belief, Defendants Moore was the person who initially suspended Plaintiff from school and is thus the "Dean of Students designee" within the meaning of Defendant JSU, JSU Student Handbook page 47, **Hearing Procedures.**

87. Defendant Moore served as the prosecutor/complaining party at the student conduct hearing and was also the school's only witness at the hearing.

88. By serving as the Dean of Students designee and the prosecutor/complaining party and witness, Defendant Moore violated Student Conduct Hearing Procedures

89. The Complainant party did not move to the admission of any exhibits at the hearing.

90. That the record and/or recording of the Student Discipline Hearing consists solely on the Transcript of the sworn, recorded testimony of the Plaintiff, and the witness, i.e. LaQuita Jones.

91. That the record is devoid of any evidence that Plaintiff knowingly brought, carried or kept a weapon or firearm on school property.

92. That on April 6, 2023, the hearing officer issued its Decision, Conclusions and Recommendations [hereinafter "Hearing Officer's Report"]

93.   That a true and correct copy of the Hearing Officer's Report is attached hereto as (Exhibit E).

94.   That the Hearing Officer found that Plaintiff "The use, storage, possession, or display of weapons, firearms, self-defense devices, or explosives is strictly prohibited on the premises of the University." In violation of Handbook Policy 4.45 and 4.50, that Defendant JSU had produced "substantial evidence" of the same, that Plaintiff's conduct warranted a long-term suspension of two calendar years, effective April 6, 2023, that Plaintiff was "not allowed on Jackson State University grounds" However, Plaintiff will be required to satisfy all financial obligations with the University for the current semester. Plaintiff may be eligible for re-enrollment beginning in the summer semester of 2025 based on the procedures outlined later in this letter. Additionally, Plaintiff's suspension will be recorded on his permanent record.

95.   The United States Constitution requires that the school prove that Plaintiff knew the weapon was in the vehicle and intended to bring it onto the school property. The school has not and cannot prove, by a preponderance of the evidence.

96.   The allegations were never thoroughly investigated being that there was no investigator involved in the process. Only alleged statements.

97.   Later that day the Plaintiff received a letter through his school email stating he was found responsible for the charge and was being suspended starting April 6, 2023, until after Spring 2025.

98.   Pursuant to Defendant JSU Student Handbook, pages 7-8, provide, in pertinent part:

### STUDENT RIGHTS AND RESPONSIBILITIES

Students shall not be deprived of life, liberty, or property without due process.

**General Student Rights and Responsibilities**

JSU Student and Student Organization General Rights

- The right to pursue an education without undue interference.
- The right to appropriately communicate one-on-one with administrators, instructors, counselors, advisors, staff and other University Officials.
- The right to fair student conduct hearings and appeals.

99.   Pursuant to Defendant JSU Student Handbook, page 47 provide, in the pertinent part:

The purpose of the administrative or student conduct committee hearing is to reach a decision regarding the accused responsibility for violation of University rules or regulations, to provide due process for the accused, and to recommend a sanction if necessary.

100.   Pursuant to Defendant JSU Student Handbook, page 105, provide, in pertinent part:

**Due Process**

- The student shall be permitted to face and question his accusers and witnesses against him/her at the hearing.

101.   Despite the reference in Defendant JSU's Handbook, Plaintiff was not allowed to face and question his accuser and or witnesses. Plaintiff was not given any evidence. Plaintiff was told to forward any questions to the email of the Dean of Students.

102.   JSU administrators never interviewed the complainant/accuser, Stanton, nor allowed him to be questioned by the Plaintiff. JSU administrators never interviewed LaQuita Jones as being the complainant in the Domestic Violence Simple Assault arrest/violation.

103.    On April 6, 2023, JSU students along with some staff members conducted a hearing in which they interviewed LaQuita Jones asking her only questions regarding her knowledge of the Plaintiff owning a gun before informing her to leave the hearing.

104.    At the hearing, Plaintiff was allowed to make a statement, however, Plaintiff was not able to explain the evidence he or she had presented, to ask questions of one or question my accuser. Plaintiff was questioned by students and the JSU coordinator for student conduct and community standards Eltease Moore. There were no trained attorneys present, if there were he/she never spoke. The hearing was recorded.

105.    JSU is bound to follow the terms of its Student Handbook, including its Policy Against Search and Seizure and its other official statements, policies, and publications.

106.    JSU's course of conduct also indicates that it intended to rely on Stanton's partial account of the alleged disciplinary violation.

107.    Despite the fact that based on its policies, and its course of conduct interpreting those policies, JSU did not investigate the totality of the complaint against Plaintiff *de novo*.

108.    Plaintiff has a constitutionally protected interest in his good name.

109.    Plaintiff has a constitutionally protected right to be free from unreasonable search and seizure.

110.    That the Defendants, individually and in concert, have deprived Plaintiff of his property right to an education in violation of the laws and constitution of the United States and the laws and constitution of the State of Mississippi.

111.    That as a graduation senior, the actions of the Defendants are also depriving Plaintiff of the right to participate in graduation ceremonies and social events with his class.

112.    That unless this Court issues a temporary restraining order or preliminary injunction prohibiting the Defendants from enforcing their order or preliminary injunction prohibiting

Plaintiff from enforcing their order to suspend Plaintiff for two-years, and prohibiting Plaintiff from going on JSU grounds, which the interpret to include participating in commencement exercises and other graduation related activities, and to deliver a JSU diploma to Plaintiff upon completeion of his school work, in the event his school work cannot be completed prior to the date of the commencement exercises, Plaintiff will be irrarably harmed. No amount of money can compensate Plaintiff for the humiliation and emotional harm which will result from not participating in the commencement exercises and graduation related social events associated therewith.

113.

114.     Plaintiff filed an appeal of the hearing.

## The Hearing and Decision Were Biased, Unfair, and Discriminatory in Violation of JSU's Policies

115.     Plaintiff was not provided any evidence or statements alleging a violation. Plaintiff was merely informed of the violation.

116.     In contrast to JSU's policy on the hearing process and right to due process, there was no formal hearing at JSU. Plaintiff was not entitled to present evidence or cross-examine witnesses.

117.     In order to arrive at this wholly illegal conclusion, disregarded the policies made by JSU. Eltease Moore did not allow the submission of any substantial evidence in the record supporting Plaintiff's case so as to not undermine Stanton's false statements in relation to the simple assault. Her treatment of the evidence shows her bias against Plaintiff and demonstrates that she went into the hearing process looking to find Plaintiff guilty and adhered to only partial merits of the violations to support that conclusion.

**Moore Ignored Evidence Supporting the Plaintiffs' Defense**

118.    Moore failed to consider any evidence that would have called into question Defendant Stanton's credibility. This includes the notarized letter she was provided with that would hold the bases for the illegal search and seizure of the Plaintiff's property. She only asked questions that supported her claim of possession of the gun not what led to the officers discovering the gun.

119.    In addition to the possible evidence calling into question the veracity or credibility of Stanton, there was significant evidence undermining Stanton's factual assertions.

120.    Defendant Moore failed to ask Plaintiff if he knowingly and/or intentionally had possession of the weapon. See Seal v. Hudson, 229 F.3d 567, 2000 U.S. App. Lexis 24939, 19-21 (6th Cir 2000)

**Consequences of JSU's Decision**

121.    Plaintiff is expected to graduate from JSU on April 29, 2023.

122.    Plaintiff has enrolled in and passed more than 50 classes collectively since his enrollment in the Fall of 2021.

123.    Plaintiff has consistently made the Dean's List since enrollment.

124.    Plaintiff is the current President of the Sigma Pi Alpha Political Science Honors Club

125.    Plaintiff is the current Mr. Pre-Law of the Fannie Lou Hamer Pre-Law Society.

126.    Plaintiff is the current Mr. Political Science of the Political Science Club

127.    Plaintiff is currently enrolled at 3 colleges (JSU, University of Arkansas at Little Rock, and Holmes Community College) taking a total of 17 classes equating to 52 credit hours. !p0 classes at JSU, 3 at UALR, and 4 at Holmes Community College.

128.   In February 2023, Plaintiff took his LSAT and received his scores and had actively been applying to law school. Plaintiff had also initiated the process of attending grad school after meeting with the Dean of the Public Policy and Administration Program in early March.

129.   Plaintiff currently serves as an intern for the Mississippi Democratic Party and upon his completion of law school and/or grad school has publicly announced his candidacy for Mississippi state Senator of District 21.

130.   Plaintiff is the President of a Mississippi registered 501C3 nonprofit, the community-based non-profit tasked with the development of affordable housing, addressing recreational opportunities county-wide, and providing affordable housing.

131.   Plaintiff has been verbally offered a teaching position upon completion of graduation.

132.   Plaintiff is a father of two one who is still in high school and is dependent on Plaintiff and his employment opportunities.

133.   Plaintiff has driven 66 miles every morning to JSU and 66 miles homes for 4 semesters for a total of 132 miles a way in complete dedication to graduating. There are 16 weeks in each semester. 16 weeks multiplied by 5 days equals 80 days a semester multiplied by 4 semester equals 320 days multiplied by 132 miles equals 42, 240 miles that I have traveled. (Exhibit G)

134.   As a result of JSU's actions, the plaintiff will lose this job offer.

135.   As a result of JSU's actions, the plaintiff will lose his internship.

136.   As a result of JSU's actions, the plaintiff's education will be put on hold and possibly terminated.

137.   Plaintiff's academic and disciplinary record has been destroyed, and there is an extremely remote chance that he will be able to complete his undergraduate degree at any school of a similar quality to JSU.

138.   Because of this suspension on his record, the possibility that the plaintiff will gain entry into graduate school is likewise remote.

139.   As a result of JSU's actions, the plaintiff has suffered stress and mental anguish and is undergoing counseling regularly since his arrest.

140.   Without immediate and appropriate redress, the incorrect and unfair outcome of JSU's disciplinary process will cause irreparable harm to the plaintiff by not permitting him to continue his education at JSU and the loss of future employment opportunities.

## CAUSES OF ACTION

### I. Injunctive Relief

(Plaintiff against Defendant JSU, Moore, Dixon )

141.   That Plaintiff hereby incorporates by reference the allegations stated in paragraphs 1- 140, supra as if fully stated herein.

142.   That Plaintiff has suffered and continues to suffer violations of numerous legal rights, due to the acts and failures to act of the Defendants, herein.

143.   That Plaintiff has no adequate remedy at law.

144.   That Plaintiff will suffer irreparable harm if this Court does not issue a temporary restraining order or preliminary injunction.

145.   That the relative hardship to Plaintiff if he is not immediately reinstated to JSU and permitted to participate in the commencement exercises and graduation-related social events associated therewith, is far greater than any alleged harm which might be suffered by Defendants, who clearly have the financial resources to absorb the cost of Plaintiff's reinstatement or participation in the commencement exercises and graduation related social events associated therewith.

146.    That there will be no adverse impact on the public interest if this court issues a TRO or preliminary injunction.

## II. Procedural Due Process

(Plaintiff against Defendant)

147.    That Plaintiff hereby incorporates by reference the allegations stated in paragraphs 1- 146, supra., as if fully stated herein.   .

148.    That Plaintiff has a constitutionally protected state-created property right to a public education.

149.    That Plaintiff has a constitutionally created and protected liberty in his good name.

150.    That Defendants have deprived Plaintiff of his constitutionally protected property right and liberty interest in his good name without providing him the procedural due process to which he is entitled.

151.    That Defendants acted with deliberate indifference to Plaintiff's constitutionally protected right to not be deprived of his state-created property right to a public education nor his liberty interest in his good name, without procedural due process of law by enacting a custom or policy which, on its face, is constitutionally defective.

152.    That the Defendants acted with deliberate indifference to Plaintiff's constitutionally protected right to not be deprived of his state-created property right to a public education nor his liberty interest in his good name, without procedural due process, by applying/enforcing a custom or policy which, as applied/enforced is unconstitutional.

153.    That the Defendants JSU, Moore, and Dixon have acted with deliberate indifference to Plaintiff's constitutionally protected right to not be deprived of his state-created property right to a public education nor his liberty interest in his good name, without procedural due process by failing to train, supervise, or to discipline individual Defendants named herein

and others, in the constitutional application/enforcement of their customs and policies and by failing to take remedial action when notified of violations.

154. That Defendants are liable to the Plaintiff herein because the deprivation of Plaintiff's constitutionally protected right to not be deprived of his state-created property right to a public education nor to his liberty interest in his good name, without procedural due process was the result of a single decision by a nonofficial with final decision-making authority.

155. That as a result of Defendants' wrongful acts and failures to act, Plaintiff herein has been injured.

156. That the Plaintiff herein is entitled to recover damages, including but not limited to special compensatory and punitive damages, and cost from the Defendants JSU, Moore, and Dixon, in an amount to be determined at trial.

### III. Breach of Contract

(Plaintiff against Defendant JSU)

157. That Plaintiff hereby incorporates by reference the allegations stated in paragraphs 1- 156, supra., as if fully stated herein.

158. Plaintiff paid JSU sums of money for his education, and in return, the University contracted to provide the plaintiff with access to its undergraduate degree program.

159. The relationship between the parties is contractual in nature, and each party owes the other certain duties, some of which can be found in the JSU Handbook, and the Acknowledgement and Assumption of Risks and Release Agreement.

160. JSU breached its contract with the plaintiff by instituting and prosecuting without a proper investigation and adjudication in violation of its policies and procedures.

161. As a direct and proximate result of that breach, the plaintiff suffered the harm described above.

## IV. Breach of Covenant of Good Faith and Fair Dealing

(Plaintiff against Defendant JSU)

162.   That Plaintiff hereby incorporates by reference the allegations stated in paragraphs 1- 161, supra., as if fully stated herein.

163.   Every contract contains within it an implied covenant of good faith and fair dealing.

164.   JSU breached that covenant by instituting an investigation into a case that had already been set to be decided in the plaintiff's favor, and by pursuing that investigation and adjudication in an unfair and biased manner.

## V. Title IX

(Plaintiff against Defendant JSU)

165.   That Plaintiff hereby incorporates by reference the allegations stated in paragraphs 1- 164, supra., as if fully stated herein.

166.   Pursuant to Title IX of the Education Amendments of 1972 JSU is further prohibited from providing a disciplinary proceeding that is not prompt or equitable.

167.   Upon information and belief, JSU trained its employees to treat male students accused of assault differently from similarly situated female students.

168.   Relying on discriminatory training, JSU's employees and students made incorrect determinations of fact, ignoring substantial evidence presented that supported the plaintiffs' case and furthermore undermined and did not take into account LaQuita Jones's case.

169.   JSU violated the plaintiff's right to be free from discrimination based on sex by subjecting him to a disciplinary proceeding marked by the aforementioned procedural flaws that resulted in an innocent person being wrongly found to have committed an offense.

## VI. 42 U.S.C. § 1983 VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS

(Plaintiff against Defendant JSU, Horton, Jordan, Stanton, Bradley)

170.    That Plaintiff hereby incorporates by reference the allegations stated in paragraphs 1- 169, supra., as if fully stated herein.

171.    The acts of the Defendants, as set forth above, illegal detention, arrest, and searching of the Plaintiff's backpack without probable cause, reasonable suspicion, or exigent circumstances, were unreasonable under the totality of circumstances, as a matter of law.

172.    In committing the acts complained of herein, the Defendants acted jointly and under color of state law to deprive Plaintiff of his clearly established constitutionally protected rights under the Fourth and Fourteenth Amendments of the United States Constitution including but not limited to:

> (a) Freedom from unreasonable seizure;
>
> (b) The right to be free from unreasonable searches;
>
> ( c) Freedom from the use of unreasonable, unjustified, and excessive force;
>
> ( d) Freedom from deprivation of liberty and property without due process of law;
>
> ( e) Freedom from summary punishment;
>
> (f) Freedom from the prevention of officers from using excessive force; and
>
> (g) Freedom from arbitrary governmental activity which shocks the conscience of a civilized society.

173.     In violating Plaintiff's rights as set forth above and other rights that will be proven at trial, Defendants acted under color of state law and conducted an unreasonable seizure of Plaintiff and utilized unnecessary, unjustified, unreasonable, and excessive force. Defendants JSU, Horton, Jordan, Stanton, and Bradley knowingly and deliberately conspired to deprive Plaintiff of his Constitutional rights.

174.    As a direct and proximate result of the violation of his constitutional rights by the

175. Defendants, Plaintiff suffered general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C. §1983.

## VII. 42 U.S.C. § 1983 FAILURE TO SUPERVISE
(Plaintiff against Defendant JSU, Horton)

176. That Plaintiff hereby incorporates by reference the allegations stated in paragraphs 1- 175, supra., as if fully stated herein.

177. Jackson State University is located in Hinds County, Mississippi.

178. Defendant JSU is under a constitutional duty to properly train, supervise, and discipline members of its own department and to ensure that policing activities are run in a lawful manner, preserving to the citizens of Mississippi the rights, privileges, and amenities guaranteed them by the Constitution of the United States and the State of Mississippi and the laws of the United States of America and the State of Mississippi.

179. Defendant JSU failed in its constitutional duty by permitting, encouraging, tolerating, and knowingly acquiescing to an official pattern, practice, or custom of its police officers, including Defendants Horton, Jordan, Stanton, and Bradley violating the constitutional rights of the public at large, including Plaintiff.

180. The actions of Defendants Horton, Jordan, Stanton, and Bradley complained of herein were unjustified, unreasonable, unconstitutional, excessive, and grossly disproportionate to the

181. seizure effectuated through the use of excessive force and unreasonable force and the deprivation of Plaintiffs' due process protections in violation of the rights secured by the Fourth and Fourteenth Amendments of the Constitution of the United States.

182. Defendant JSU had a duty to supervise and prevent the other officers at the scene from violating Plaintiff's constitutional rights.

183. Defendant JSU is liable for the actions of Defendants Horton, Jordan, Stanton, and Bradley by virtue of the fact that it was informed of the improper conduct of Defendants Horton,

Jordan, Stanton, and Bradley and failed to discipline them, evidencing that the conduct of Defendants Horton Jordan, Stanton, and Bradley at the time of the events described herein conformed with existing policies, practices, and customs of Defendant JSU, and that it ratified the unlawful acts of Defendants Horton, Jordan, Stanton, and Bradley.

184. Defendant JSU is directly liable for the violation of Plaintiff's constitutional rights due to the following policies, practices, or customs which were in effect at the time of this incident and which were the moving force behind the violation of Plaintiff's constitutional rights.

    (a) Defendant JSU failed to adequately respond to and investigate complaints regarding officer misconduct by Plaintiff, including, but not limited to complaints regarding the falsified affidavits, detention, arrest, and use of force. Thus creating a policy, practice, custom, or atmosphere where such illegal and unconstitutional behavior is ratified, condoned, or approved, and deliberate indifference and reckless disregard to the rights of the public at large, including Plaintiff.

185. Under currently existing law, Defendant JSU is liable for constitutional violations committed by Defendants Horton, Jordan, Stanton, and Bradley under the doctrines of agency, vicarious liability, employer-employee relations, master-servant, respondents superior, joint venture, contract, and as a result of its non-delegable duty to provide officers to comply with the Constitution and laws of the United States and the State of Mississippi.

186. As a direct and proximate result of the foregoing policies, practices, and customs,

187. Defendant JSU is responsible for the violations of the constitutional rights by the Defendants which were substantially certain to occur and were the moving force behind the violation of Plaintiff's constitutional rights. Plaintiff is therefore entitled to and does seek compensatory and punitive damages against the Defendants.

## COUNT VIII - 42 U.S.C. § 1983 CLAIM PUBLIC ENTITY LIABILITY

## VIOLATION OF SECTION 1983 AGAINST JSU

(Plaintiff against JSU)

188.    That Plaintiff hereby incorporates by reference the allegations stated in paragraphs 1- 187, supra., as if fully stated herein.

189.    JSU and its decision-makers, acting under color of law and with deliberate indifference, gross negligence, and reckless disregard for the safety, security, and constitutional and statutory rights of Plaintiff, as well as others similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied the following policies, practices, or customs and usages:

> (a) Failure to implement protocols and train officers in the proper way to contain, treat and secure individuals such as Plaintiff who present no threat to the officers at the time of engagement.

190.    JSU's actions under color of law deprived Plaintiff of the rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments to the Constitution of the United States, violating 42 U.S.C. §1983.

191.    As a direct and proximate result of this conduct by" JSU, Plaintiff sustained serious personal injuries and suffered the damages outlined herein, as well as incurring litigation costs fees. Plaintiff is therefore entitled to and does seek compensatory and punitive damages against the Defendants.

## COUNT IX - 42 U.S.C. § 1983 CONSPIRACY TO DEPRIVE

## CONSTITUTIONAL RIGHTS

(Plaintiff against Defendants)

192.   That Plaintiff hereby incorporates by reference the allegations stated in paragraphs 1- 191, supra., as if fully stated herein.

193.   Defendants Horton, Jordan, Stanton, and Bradley acting within the scope of their employment and under color of law, agreed among themselves and with other individuals to act in concert to deprive Plaintiff of his constitutional rights, including his rights to due process and a fair trial, all as described in the various paragraphs of this Complaint.

194.   Additionally, before and after Plaintiff's trial, Defendants Horton, Jordan, Stanton, and Bradley further conspired to deprive Plaintiff of exculpatory information to which he was lawfully entitled and which would have led either to his not being charged, his acquittal, or his more timely exoneration.

195.   In this manner, Defendant Horton, Jordan, Stanton, and Bradley, acting in concert with other unknown coconspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means to deprive Plaintiff of his constitutionally protected right to not be deprived of his state-created property rights to a public education nor to his liberty interest in his good name, without procedural and substantive due process.

196.   In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated numerous overt acts, including but not limited to those set forth above - such as withholding exculpatory evidence, coercing false statements, and was an otherwise willful participant in joint activity.

197.   As a direct and proximate result of the illicit prior agreement and actions in furtherance of the conspiracy referenced above, Plaintiff's rights were violated, and he suffered injuries, including but not limited to loss of liberty, physical sickness, and emotional distress.

198.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and deliberate indifference to Plaintiff's rights.

199.   Plaintiff is therefore entitled to and does seek compensatory and punitive damages against the Defendants

## COUNT X - TORT OF MALICIOUS PROSECUTION

(Plaintiff against Defendants JSU, Horton, Jordan, Stanton, and Bradley )

200.   That Plaintiff hereby incorporates by reference the allegations stated in paragraphs 1- 199, supra., as if fully stated herein.

201.   Defendant Stanton caused criminal proceedings to be instituted against Plaintiff without probable cause and with malice as defined by state tort law. The proceedings are set to be terminated on April 11, 2023, in Plaintiff's favor.

202.   Defendant Jordan caused criminal proceedings to be instituted against Plaintiff without probable cause and with malice as defined by state tort law. The proceedings are set to be terminated on April 11, 2023, in Plaintiff's favor.

203.   Defendant Bradley caused criminal proceedings to be instituted against Plaintiff without probable cause and with malice as defined by state tort law. The proceedings terminated on April 11, 2023, in Plaintiff's favor.

204.   Defendant Stanton's statements regarding Plaintiff's alleged culpability were made with knowledge that said statements were false and perjured, withholding of exculpatory evidence that would have demonstrated Plaintiff's absolute innocence.

205.   The Defendants were aware that, as described more fully above, no true or reliable evidence implicated Plaintiff to have assaulted anyone.

206.   The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of others.

207.   As a direct and proximate result of this misconduct, Plaintiff sustained and continues to sustain, injuries as set forth above, including physical sickness and emotional distress.

208.    Plaintiff is therefore entitled to and does seek compensatory and punitive damages against
the Defendants.

## COUNT XI - 42 U.S.C. § 1983 FAILURE TO INTERVENE

(Plaintiff against Defendants JSU, Horton, Jordan, Stanton, and Bradley)

209.    That Plaintiff hereby incorporates by reference the allegations stated in paragraphs 1 - 208,
supra., as if fully stated herein.

210.    After the false arrest by Defendant Stanton, Defendants Horton, Jordan, and Bradley acting
within the scope of their employment and under color of law, agreed among themselves and
with other individuals to act in concert with the arrest against Plaintiff even though there
was no evidence direct or indirectly linking the plaintiff. Additionally, before, during, and
after Plaintiff's trial, the Defendants Horton, Jordan, Stanton, and Bradley continued Not to
Intervene thus depriving Plaintiff, which would have led either to his not being charged, his
acquittal, or his more timely exoneration

211.    In the manner described above, by their conduct and under color of law, during the
constitutional violations described herein, one or more of the Defendants stood by without
intervening to prevent the violation of the Plaintiff's constitutional rights, even though they
had the opportunity to do so.

212.    As a direct and proximate result of the Defendants' failure to intervene to prevent the
violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including but not
limited to loss of liberty, physical harm, and emotional distress. These Defendants had a
reasonable opportunity to prevent this harm but failed to do so. Defendant Stanton
knowingly submitted a false affidavit to the judge with false information involving the
plaintiff.

213.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to the Plaintiff's clearly established constitutional rights. Plaintiff is therefore entitled to and does seek compensatory and punitive damages against the Defendants.

## COUNT XII - 42 U.S.C. § 1983 INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Plaintiff against Defendants)

214.    That Plaintiff hereby incorporates by reference the allegations stated in paragraphs 1- 213, supra., as if fully stated herein.

215.    The acts and conduct of the Defendants as set forth above were extreme and outrageous. The Defendants' actions were rooted in an abuse of power or authority, and they were undertaken with the intent to cause or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

216.    As a direct and proximate result of Defendant's actions, Plaintiff suffered and continues to suffer physical sickness and severe emotional distress. Plaintiff is therefore entitled to and does seek compensatory and punitive damages against the Defendants.

## COUNT XIII - 42 U.S.C. § 1983 CIVIL CONSPIRACY

### (Plaintiff against Defendants)

217.    That Plaintiff hereby incorporates by reference the allegations stated in paragraphs 1- 216, supra., as if fully stated herein.

218.    As described more fully in the preceding paragraphs, the Defendant Officers, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

219.    In furtherance of the conspiracy, Defendants Horton, Jordan, Stanton, and Bradley committed overt acts and were otherwise willful participants in joint activity including but not limited to the malicious prosecution of Plaintiff and the intentional infliction of emotional distress upon him.

220.    The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of others.

221.    As a direct and proximate result of the Defendants' conspiracy, Plaintiff suffered damages, including physical sickness and severe emotional distress, which is more fully alleged above.

222.    Plaintiff is therefore entitled to and does seek compensatory and punitive damages against the Defendants.

## COUNT XIV - 42 U.S.C. § 1983 INDEMNIFICATION

(Plaintiff against Defendants Moore, Dixon, Horton, Jordan, Stanton, and Bradley)

223.    That Plaintiff hereby incorporates by reference the allegations stated in paragraphs 1- 222, supra., as if fully stated herein.

224.    Arkansas law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

225.    The Defendants are or were employees of JSU, who acted within the scope of their employment in committing the misconduct described herein. Plaintiff is therefore entitled to and does seek compensatory and punitive damages against the Defendants.

## COUNT XV - 42 U.S.C. § 1983 UNLAWFUL DETENTION

(Plaintiff against Defendants JSU, Horton, Jordan, Stanton, and Bradley)

226.    That Plaintiff hereby incorporates by reference the allegations stated in paragraphs 1- 225, supra., as if fully stated herein.

227.   The acts and omissions of the Defendants as described herein, and the wrongful and
       unlawful detention and/or arrest of Plaintiff, violated his rights under the laws and the
       Constitution of the United States including but not limited to his right to be free from
       unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United
       States Constitution.

228.   As a proximate result of the conduct of the defendants, Plaintiff was damaged in an amount
       to be determined by proof at trial.

229.   As a result of their conduct, Defendants are liable for Plaintiffs' injuries, either because they
       were integral participants in the misconduct, or because they failed to intervene when they
       had the opportunity and duty to do so to prevent these violations.

230.   Defendants engaged in the aforementioned acts maliciously, callously, oppressively,
       wantonly, recklessly, fraudulently, with deliberate indifference to the rights allegedly violated,
       despicably and with evil motive and/or intent, and in disregard of the rights of Plaintiff.

231.   Plaintiff is therefore entitled to and does seek compensatory and punitive damages against
       the Defendants

## COUNT XVI - 42 U.S.C. § 1983 Violation of Civil Rights (Monell Claim)

(Plaintiff against Defendants JSU)

232.   That Plaintiff hereby incorporates by reference the allegations stated in paragraphs 1- 231,
       supra., as if fully stated herein.

233.   Defendants, Horton, Jordan, Stanton, and Bradley in his/her official capacity knowingly,
       with grossly negligently, or with deliberate indifference to the rights allegedly violated, caused
       to come into being, maintained, fostered, condoned, approved of, either before the fact or
       after the fact, ratified, took no action to correct, an official policy, practice, procedure, or
       custom of permitting the occurrence of the categories of wrongs outlined in this pleading,

and/or improperly, inadequately, with deliberate indifference to the state and/or federal constitutional or statutory rights of the person, grossly negligently with reckless disregard to state or federal constitutional and/or statutory rights failed to properly train, to supervise, to retrain if necessary, to monitor, or to take corrective action concerning the police and with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by Plaintiff pursuant to the principles set for in the *Monell v. New York City Dept. of Social Services.*

234.    As a proximate result of the foregoing wrongful acts of Defendants, and each of them, Plaintiff sustained general damages, including pain and suffering, and a loss of the enjoyment of life and other hedonic damages.

## COUNT XVII – PUNITIVE DAMAGES

(Plaintiff against all Defendants)

235.    That the Plaintiff hereby incorporate by reference the allegations stated in paragraphs 1-234, supra, as if fully stated herein

236.    That the Defendants actions as set forth above, were intentional, malicious, and with reckless indifference toward Plaintiff.

237.    That the Defendants knew or should have known that their actions were illegal

238.    That Plaintiff is entitled to punitive damages, in an amount to be proven at trial.

## JURY DEMAND

Come now the Plaintiff and hereby demand a trial by jury on all counts so triable.

## PRAYER

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the defendants on all counts of this complaint. Plaintiff further requests that this Court:

1. Issue a preliminary and permanent injunction enjoining defendant JSU from imposing the

expulsion;

2. Order defendant JSU to reverse its finding that Plaintiff violated its policies, and expunge his record;

3. Award Plaintiff compensatory and punitive damages in an amount to be determined at trial;

4. Award Plaintiff the reasonable costs of this action, including attorneys' fees;

5. Grant such other and further relief as this Court deems equitable and just.

PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully submitted,

4/11/2023

Date

Roderick Talley

34 Taylor Street

Durant, MS 39063

662-318-6713

Date April 10, 2023